MATTHEW J. ADLER (SBN 273147)
*matthew.adler@faegredrinker.com*
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center, 27th Floor
San Francisco, California 94111
Telephone: +1 415 591 7500
Facsimile: +1 415 591 7510

Attorneys for Defendant
TRUSTAGE FINANCIAL GROUP, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

TRAVIS CREDIT UNION,

Plaintiff,

v.

TRUSTAGE FINANCIAL GROUP, INC, an Iowa Corporation, and DOES 1-10,

Defendants.

Case No. 2:24-cv-00823-DAD-DB

Hon. Dale A. Drozd
Courtroom 4

**DEFENDANT TRUSTAGE FINANCIAL GROUP, INC.'S ANSWER AND AFFIRMATIVE DEFENSES**

Complaint Filed: Feb. 14, 2024
Case Removed: March 15, 2024

Defendant TruStage Financial Group, Inc. ("TruStage"), through undersigned counsel, respectfully submits this Answer and Affirmative Defenses to the Complaint ("Complaint") filed by Plaintiff Travis Credit Union ("Travis"). TruStage denies each and every allegation, claim, and cause of action unless specifically admitted herein. Subject to these denials and the affirmative defenses set forth herein, TruStage responds to the individually numbered allegations of the Complaint as follows:

**THE PARTIES**

1. Plaintiff is a California-chartered credit union headquartered in Vacaville, California.

**RESPONSE**: **Admitted.**

2. Plaintiff is informed and believes, and thereon alleges, that Defendant TruStage Financial Group, Inc. (formerly CUNA Mutual Group) ("Defendant" or "TruStage") is an Iowa corporation conducting business in California.

**RESPONSE**: **Admitted in part; denied in part. TruStage admits that it is an Iowa corporation. TruStage denies that it conducts business in California. TruStage further denies that it was formerly "CUNA Mutual Group." CUNA Mutual Group was a marketing designation used by a number of affiliated insurance companies, but it is no longer in use. TruStage was formerly CUNA Mutual Financial Group, Inc.**

3. Plaintiff is unaware of the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is liable to Plaintiff in some manner for the cause of action alleged herein. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of the fictitiously named Defendants when their identities have been ascertained.

**RESPONSE**: **The allegations of this paragraph are not directed to TruStage, and as such no response is required. To the extent a response is deemed to be required, TruStage is without information or knowledge sufficient to form a belief about the truth of these allegations, which are therefore denied.**

**JURISDICTION AND VENUE**

4. This Court has personal jurisdiction over TruStage because it operates and conducts business in the State of California.

**<u>RESPONSE</u>: Denied. By way of further response, TruStage is not the issuer of the bond at issue in this case and took no actions, either in California or otherwise, with respect to the sale of that bond or the denial of Travis's claim under the same.**

5. Venue is proper in Solano County because the contract was made, obligations or liabilities arose, and the performance of the contract and breaches occurred in Solano County.

**<u>RESPONSE</u>: The allegations in this paragraph relate to the appropriateness of the venue when this case was filed in the District Court of Solano County. The case has since been removed and these allegations are no longer applicable. To the extent a response is required, TruStage admits that venue in this Court is appropriate because it is the federal district court embracing the county of Solano, where the case was initially filed in state court.**

**GENERAL ALLEGATIONS**

6. Plaintiff purchased a TruStage fidelity bond (the "Bond"). The Bond was effective at all relevant times alleged in this Complaint.

**<u>RESPONSE</u>: Admitted in part; denied in part. It is admitted that Travis purchased and was insured under Fidelity Bond Number 312484-3, which was effective at all relevant times. Denied that the bond was issued by TruStage, or that TruStage had any duties or obligations thereunder. By way of further response, the bond was issued by CUMIS Insurance Society, Inc. ("CUMIS").**

7. At least between January 1, 2021 and June 30, 2022, certain of Plaintiff's loan officers and complicit staff (hereinafter "loan officers") manipulated Plaintiff's real-estate loan origination system ("LOS") to misclassify real estate loan originations for purposes of generating improper and fraudulent commissions.

**<u>RESPONSE</u>: Admitted in part; denied in part. TruStage admits only that certain of Travis's real estate loan originations were misclassified and resulted in higher commission**

**payments than would have been paid if properly classified. TruStage is without knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in this paragraph, and therefore denies the same.**

8. Pursuant to Plaintiff's 2021 commission plans, External Loan Officers were only entitled to commissions on externally-sourced loans that they actually closed on. The Sales Manager Plan allowed for commission based upon all External Loan Officers' volume of loans funded.

**RESPONSE: TruStage is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph, and therefore denies the same.**

9. In April of 2022, External Loan Officers were reclassified as Senior Mortgage Loan Officers. At that time, "retail referred" loans (some of which may have been internally-sourced) became commissionable. However, they were only commissionable if the Senior Mortgage Loan Officer actually generated the loan submission package with the borrower and submitted it to the operations team.

**RESPONSE: TruStage is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph, and therefore denies the same.**

10. The first method the loan officers used to fraudulently misclassify real estate loan originations was to characterize them on Plaintiff's LOS as commissionable for certain employees when, in fact, they were not commissionable. The loan officers who perpetuated the fraud changed the loan officer assignment in the LOS to reflect that an External Loan Officer had either originated the loan, or had generated the loan submission package, when the External Loan Officer had not. In many instances, the LOS reassignment occurred shortly before or after the loans had actually funded. As a result, Travis's LOS falsely reflected a commission due to the External Loan Officer to whom the loans were reassigned, when no commission was actually due.

**RESPONSE: Admitted in part; denied in part. TruStage admits only that certain of Travis's real estate loan originations were misclassified and resulted in higher commission**

**payments than would have been paid if properly classified. TruStage is without knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in this paragraph, and therefore denies the same.**

11. The second method the loan officers used to fraudulently misclassify loans was to make them appear to be commissionable at a higher rate than they were. Pursuant to Plaintiff's commission plans, in instances in which refinanced loans were commissionable, these loans were commissionable at a lower rate than new money. The loan officers who were engaged in the fraud would misclassify loans as new money, making them appear to be commissionable at the higher rate.

**RESPONSE**: **Admitted in part; denied in part. TruStage admits only that certain of Travis's real estate loan originations were misclassified and resulted in higher commission payments than would have been paid if properly classified. TruStage is without knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in this paragraph, and therefore denies the same.**

12. As a result of these misclassified loans, Plaintiff suffered a total of $714,812.00 in losses.

**RESPONSE**: **Admitted in part; denied in part. TruStage admits only that certain of Travis's real estate loan originations were misclassified and resulted in higher commission payments than would have been paid if properly classified. TruStage is without knowledge or information sufficient to form a belief about the truth of the remaining allegations set forth in this paragraph, and therefore denies the same. By way of further response, TruStage denies that Plaintiff suffered any "loss" as defined by the applicable coverages of the bond.**

13. Upon discovery of the fraud, Plaintiff hired a forensic auditor to examine its lending portfolio to ascertain the scope of the defalcations and whether any loans suffered increased risk as a result of the fraud. The audit cost Plaintiff $43,058.76.

**RESPONSE**: **TruStage is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph, and therefore denies the**

**same.**

14. All told, Plaintiff separated 12 employees who either participated in the fraud, or who were derelict in supervising those employees and in performing their control responsibilities.

**<u>RESPONSE</u>: TruStage is without knowledge or information sufficient to form a belief about the truth of the allegations set forth in this paragraph, and therefore denies the same.**

15. Plaintiff filed a claim with TruStage on August 9, 2022. On August 11, 2022, TruStage assigned a claim number and informed Plaintiff that it would review the claim for potential coverage, including coverage under the Employee or Director Dishonesty Coverage and the Faithful Performance – Enhanced Coverage provisions of the Bond.

**<u>RESPONSE</u>: Admitted in part; denied in part. Admitted that Travis filed a claim for indemnification pursuant to the bond on or around August 9, 2022 and that on August 11, 2022, the claim was acknowledged. Denied that the claim was submitted to *TruStage*, or that *TruStage* acknowledged the claim. By way of further response, TruStage did not issue the bond, was not a party to the bond, and did not adjudicate Travis's claim under the bond. The claim was submitted to and acknowledged by *CUMIS*, not TruStage.**

16. The Employee or Director Dishonesty Coverage provides that TruStage will pay for loss resulting directly from dishonest acts committed by an employee or director where the dishonest acts are committed with the intent to cause Plaintiff to sustain such loss or obtain an improper financial benefit for the employee, director, or for any other person or entity. In other words, the Employee or Director Dishonesty Coverage pays for loss resulting from the dishonest acts committed by an employee.

**<u>RESPONSE</u>: Denied as stated. TruStage admits that the bond provided for "Employee or Director Dishonesty" coverage. TruStage denies that the allegations set forth in this paragraph completely and accurately reflect the terms of that coverage, and specifically denies any allegations that are contrary to those terms. By way of further response, the bond's Employee or Director Dishonesty coverage provides that CUMIS "will pay you for your loss resulting directly from dishonest acts committed by an 'employee' or**

**'director,' acting alone or in collusion with others." Where "some or all of your loss resulted director or indirectly from a 'loan' or 'trade,' that portion of the loss is not covered unless you establish that the portion of the loss involving a 'loan' or 'trade' resulted directly from dishonest acts committed by the 'employee' or 'director,' acting alone or in collusion with others, with the intent to: 1) Cause you to sustain such loss; and 2) Obtain an improper financial benefit for the 'employee' or 'director,' or a financial benefit for any other person or entity." The bond further provides that "[a]s used in this coverage, an improper financial benefit does not include any employment benefits received in the course of employment including salaries, commissions, fees, bonuses, promotions, awards, profit sharing, business entertainment or pensions." Further, "[a]s used in this coverage, loss does not include any employment benefits, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing, business entertainment or pensions, intentionally paid by you."**

17. The Faithful Performance – Enhanced Coverage provides that TruStage will pay for loss resulting directly from an employee's failure to faithfully perform his or her trust.

**<u>RESPONSE</u>: Denied as stated. TruStage admits that the bond provides for "Faithful Performance – Enhanced Coverage." TruStage denies that the allegations set forth in this paragraph completely and accurately reflect the terms of that coverage, and specifically denies any allegations that are contrary to those terms. By way of further response, the bond specifically defines "failure to perform his/her trust" to mean "acting in conscious disregard of your established and enforced share or deposit policies or that portion of your established and enforced lending policy which sets out the parameters which must be met in order for a 'loan' to be approved."**

18. The bond also contains an Audit and Claims Expense coverage, which provides that TruStage will pay the necessary and reasonable fees and expenses Plaintiff has paid for a special audit of its records to establish a valid and collectible loss under the Employee or Director Dishonesty Coverage or the Faith [sic] Performance – Enhanced Coverage.

**<u>RESPONSE</u>: Denied as stated. TruStage admits that the bond provides for "Audit**

**and Claims Expense" coverage. Denied that such coverage requires *TruStage* to pay anything, because TruStage did not issue the bond, is not a party to the bond, and has no obligations under the bond. TruStage further denies that the allegations set forth in this paragraph completely and accurately reflect the terms of that coverage, and specifically denies any allegations that are contrary to those terms. By way of further response, the bond specifically states that "[a]ny covered fees or expenses will be paid only after settlement of the covered loss under this Bond" and that CUMIS "shall have no liability to pay any such fees or expenses, if the amount of the covered loss does not exceed the Single Loss Deductible Amount applicable to the coverage under which the loss was covered."**

19. On November 17, 2022, Plaintiff submitted proof of loss to TruStage. Almost ten months later, despite the clear and unambiguous language of the Employee or Director Dishonesty Coverage and the Faithful Performance – Enhanced Coverage, TruStage denied coverage on September 14, 2023.

**<u>RESPONSE</u>: Admitted in part; denied in part. Admitted only that Travis submitted certain documentation in support of its claim on or about November 17, 2022, and that Travis's claim was denied on September 14, 2023. The remaining allegations of this paragraph are denied. By way of further response, TruStage denies that proof of loss was submitted *to TruStage* or that *TruStage* denied Travis's claim. The claim was submitted to CUMIS and CUMIS made the claim decision. TruStage also denies the implication in the paragraph that Travis was entitled to coverage under the bond's Employee or Director Dishonesty Coverage and/or its Faithful Performance – Enhanced Coverage.**

20. The loss suffered by Plaintiff falls squarely within the coverage under the Bond. There are no exclusions under the terms of the Bond that permit TruStage to avoid its obligation to indemnify Plaintiff. Nevertheless, TruStage continues to deny coverage for the losses incurred by Plaintiff.

**<u>RESPONSE</u>: Denied.**

21. TruStage has breached, and continues to breach, the terms of the parties' contract by refusing to indemnify Plaintiff for its losses pursuant to the terms of the Bond. TruStage has

also breached, and continues to breach, its duty of good faith and fair dealing to Plaintiff by, *inter alia*, asserting an interpretation of its Bond language that is inconsistent with its own understanding thereof, engaging in conduct calculated to further its own economic interests, and failing and refusing to reimburse Plaintiff for losses suffered.

**RESPONSE**: **Denied.**

**FIRST CAUSE OF ACTION**

**(Breach of Insurance Contract)**

22. Plaintiff incorporates the allegations in paragraphs 1 through 21, above, as though fully restated here.

**RESPONSE**: **TruStage incorporates its responses to the allegations in paragraphs 1 through 21 above, as though fully reinstated herein.**

23. The Bond is a valid and enforceable contract.

**RESPONSE**: **Denied as stated. It is admitted that Fidelity Bond Number 312484-3 is a valid and enforceable contract. It is denied that the bond is enforceable *against TruStage*, as TruStage did not issue the bond, was not a party to the bond, and had no obligations under the bond.**

24. Except to the extent that Plaintiff's performance has been excused, waived, or prevented by TruStage's conduct, Plaintiff has performedall [sic] conditions, covenants, and promises required on its part to be performed in accordance with the terms of the Bond.

**RESPONSE**: **Denied as stated. TruStage admits that Travis has paid premiums sufficient to keep the bond in force and timely submitted a claim to CUMIS for coverage. TruStage denies the allegations of this paragraph to the extent that they imply that the proof of loss submitted by Travis established coverage under the bond.**

25. TruStage breached the Bond by, without limitation, refusing to indemnify Plaintiff for covered losses as alleged above.

**RESPONSE**: **Denied.**

26. As result [sic] of TruStage's breach of the Bond, Plaintiff has suffered damages in the amount of at least $714,812.00 paid to employees for the fraudulently misclassified loans and

at least $43,058.76 in audit expenses and fees to establish a valid and collectible loss under the Bond.

**<u>RESPONSE</u>: Denied.**

**<u>SECOND CAUSE OF ACTION</u>**

**(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)**

27. Plaintiff incorporates the allegations in paragraph 1 through 26, above, as though fully restated here.

**<u>RESPONSE</u>: TruStage incorporates its responses to the allegations in paragraphs 1 through 26 above, as though fully reinstated herein.**

28. There was implied in the Bond a covenant of good faith and fair dealing whereby TruStage agreed that it would act in good faith and deal fairly and honestly with Plaintiff and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights under the terms of the Bond.

**<u>RESPONSE</u>: The allegations of this paragraph are not factual allegations but legal conclusions to which no response is required. To the extent a response is deemed to be required, TruStage denies that it was a party to any such implied covenant of good faith and fair dealing, because TruStage did not issue the underlying bond, was not a party to the underlying bond, and had no duties or obligations under the underlying bond.**

29. As alleged herein, TruStage breached the covenant of good faith and fair dealing by its acts, including but not limited to, the conduct alleged above.

**<u>RESPONSE</u>: Denied.**

30. Except to the extent Plaintiff's performance has been excused, waived, or prevented by TruStage's conduct, Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms of the Bond.

**<u>RESPONSE</u>: Denied as stated. TruStage admits that Travis has paid premiums sufficient to keep the bond in force and timely submitted a claim to CUMIS for coverage. TruStage denies the allegations of this paragraph to the extent that they imply that the proof of loss submitted by Travis established coverage under the bond.**

31. As a proximate result of TruStage's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages, including the amount it reimbursed its member assuming TruStage would fulfill its obligations.

**RESPONSE**: **Denied.**

32. TruStage's breach of the Bond was malicious and oppressive. TruStage has accepted the policy premiums paid by Plaintiff but has denied coverage to avoid paying a legitimate claim. There is no objective basis, legally or factually, for TruStage's position. Instead, Plaintiff is informed and believes and, on that basis, alleges that TruStage took such actions with the intent of causing Plaintiff to litigate this action to obtain the indemnity it purchased from TruStage. Therefore, TruStage's actions were malicious and oppressive because they were conducted with a willful and conscious disregard of Plaintiff's rights and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. On that basis, Travis is entitled to recover punitive and exemplary damages.

**RESPONSE**: **Denied.**

**THIRD CAUSE OF ACTION**

**(DECLARATORY RELIEF)**

33. Plaintiff incorporates the allegations in paragraphs 1 through 31, above, as though fully reinstated here.

**RESPONSE**: **TruStage incorporates its responses to the allegations in paragraphs 1 through 31 above, as though fully reinstated herein.**

34. An actual controversy has arisen and now exists between Plaintiff and TruStage concerning their respective rights, duties, and obligations under the Bond. Plaintiff contends that TruStage has an obligation to indemnify Plaintiff for losses suffered as a result of the fraud perpetrated by its employees. TruStage contends that it does not have such an obligation.

**RESPONSE**: **Admitted in part and denied in part. TruStage admits that it contends that it has no obligation to indemnify Travis under the bond. TruStage denies that there is an "actual controversy" between Travis and TruStage because TruStage did not issue the fidelity bond at issue, is not a party to the fidelity bond at issue, and has no obligations**

**under the fidelity bond at issue.**

35. Plaintiff is entitled to a judicial declaration of its rights under the terms of the Bond.

**__RESPONSE__: Denied.**

36. Without such a declaration, Plaintiff is informed and believes that TruStage will continue to deny coverage under the Bond.

**__RESPONSE__: Denied as stated. TruStage denies that it ever denied coverage under the Bond, or that it even *could* deny coverage under the Bond, because it did not issue the bond, is not a party to the bond, and has no obligations under the fidelity bond at issue.**

**__AFFIRMATIVE AND OTHER DEFENSES__**

Having answered the individually numbered paragraphs of the Complaint, TruStage asserts the following defenses. By setting forth these defenses, TruStage does not assume the burden of proving any fact, issue, or element of a cause of action where such burden properly belongs to Travis. Moreover, nothing stated herein is intended or shall be construed as an admission that any particular issue or subject matter is relevant to Travis's allegations.

1. The Complaint, and each purported claim therein, fails to state a claim against TruStage upon which relief can be granted.

2. This Court lacks *in personal* jurisdiction over the claims asserted by Travis against TruStage. TruStage is not a California corporation, nor does it have its principal place of business in California, and is therefore not subject to general *in personam* jurisdiction in California. Moreover, while it is authorized to do business in California, TruStage did not issue the fidelity bond at issue in this case, was not a party to the fidelity bond at issue in this case, and did not adjudicate Travis's claim for benefits, which is at issue in this case. TruStage did not purposefully direct *any* activities relevant to Travis's claim into the State of California, and is therefore not subject to specific *in personal* jurisdiction.

3. The Complaint, and each purported claim therein, fails as a matter of law because TruStage did not issue the fidelity bond at issue in this case, was not a party to the fidelity bond at issue in this case, had no duties or obligations under the fidelity bond at issue in this case, and did

not adjudicate Travis's claim for benefits, which is at issue in this case. The issuer of the bond, and the proper defendant in this action, is CUMIS Insurance Society, Inc., and not TruStage.

4. The Complaint, and each purported claim therein, fails as a matter of law because the "loss" purportedly suffered by Travis does not fall within the scope of the fidelity bond's Employee or Director Dishonesty Coverage. Travis sought indemnification for funds it claims were improperly paid as commissions to its own loan officers and employees as a result of their fraudulent activities. The bond's Employee or Director Dishonesty Coverage provides that CUMIS "will pay you for your loss resulting directly from dishonest acts committed by an 'employee' or 'director,' acting alone or in collusion with others." However, it specifically provides that "loss" does not include "any employee benefits, including: salaries, commissions, fees, bonuses, promotions, awards, profit sharing, business entertainment or pensions, intentionally paid by you." Because the indemnification Travis seeks is for payment of purportedly unearned commissions, no "loss" has occurred as defined in the Employee or Director Dishonesty Coverage. Moreover, because these commissions resulted from loans issued by Travis, Travis must establish that the dishonest acts were committed with the intent to *both* cause Travis to sustain a loss and to obtain an improper financial benefit for the employee or director or a financial benefit for any other person or entity. The bond specifically states that "improper financial benefit" "does not include any employment benefits received in the course of employment including salaries, commissions, fees, bonuses, promotions, awards, profit sharing, business entertainment or pensions. Because the only purported benefits obtained were commissions, there was no "improper financial benefit," and therefore no coverage.

5. The Complaint, and each purported claim therein, fails as a matter of law because the "loss" purportedly suffered by Travis does not fall within the scope of the fidelity bond's Faithful Performance – Enhanced Coverage. Such coverage is available for losses resulting directly from a named employee's "failure to faithfully perform his/her trust." "Failure to faithfully perform his/her trust" is a defined term that means "acting in conscious disregard of your established and enforced share or deposit policies or that portion of your established and enforced lending policy which sets out the parameters which must be met in order for a 'loan' to

be approved." It does not mean, *inter alia*, "[c]onscious disregard of any policies other than lending, share or deposit policies, including, without limitation, personnel policies, investment policies, or collection policies or that portion of any policy that relates to the collection of monies." Travis has not identified any share or deposit policy that the employees purportedly violated or disregarded in connection with their purported misclassification of loans, and the claim is not based on allegations that any of these loans were improperly approved. There is therefore no "failure to faithfully perform his/her trust" in connection with Travis's claim, and the bond's Faithful Performance – Enhanced Coverage does not provide for indemnification.

6. The Complaint, and each purported claim therein, fails as a matter of law because the "loss" purportedly suffered by Travis does not fall within the scope of the fidelity bond's Audit and Claims Expense coverage. In order to obtain indemnification under this coverage, Travis first had to establish that the special audit it commissioned resulted in the establishment of a claim covered under the bond. Because the audit did not result in the establishment of a claim covered under either the bond's Employee or Director Dishonesty coverage or the bond's Faithful Performance – Enhanced Coverage, no indemnification is available under the Audit and Claims Expense coverage.

7. Travis's recovery, if any, is subject to the amount of the applicable deductible(s) and/or coverage limit(s) set forth within the fidelity bond itself. Specifically, the bond's "Employee or Director Dishonesty" coverage and "Faithful Performance – Enhanced Coverage" are each subject to a single loss deductible of $100,000 and a single loss limit of liability of $10 million, and the bond's Audit and Claims Expense coverage is subject to a single loss limit of liability of $100,000.

8. Travis's recovery, if any, is limited and/or subject to valid offsets for commission payments actually earned by its loan officers who were the subject of its bond claim but withheld by Travis as an offset against the purported unearned commissions those officers received.

9. Travis's declaratory judgment claim is barred because the issue upon which Travis seeks a judicial declaration (i.e., whether there is coverage under the bond) will necessarily be determined as part of its breach of contract claim.

10. To the extent that Travis seeks punitive and/or exemplary damages, TruStage invokes its right under the due process clause of the Fifth Amendment of the United States Constitution as applied to the states through the Fourteenth Amendment of the United States Constitution. TruStage affirmatively pleads that First Service's pleading of punitive and/or exemplary damages violates the due process clause of the Fifth and Fourteenth Amendments.

11. TruStage reserves the right to plead any additional affirmative defenses that become available or known as this action proceeds, including, but not limited to, those defenses that become known to TruStage through discovery. TruStage reserves the right to amend its Answer to add such additional defenses or to delete any affirmative defenses that it determines are not applicable, as well as any counterclaims and third-party claims, based upon information revealed during the discovery process.

WHEREFORE, Defendant TruStage prays for relief as follows:

1. That the Court enter judgment against Travis and in favor of TruStage and that Travis take nothing;

2. That the Court award TruStage its costs; and

3. That the Court award TruStage any further relief that this Court deems just and proper.

Dated: March 22, 2024

FAEGRE DRINKER BIDDLE & REATH LLP

By: /s/ Matthew J. Adler
Matthew J. Adler

Attorneys for Defendant
TRUSTAGE FINANCIAL GROUP, INC.