Stuart M. Richter (SBN 126231)
stuart.richter@katten.com
Arron J. Pak (SBN 341572)
arron.pak@katten.com
**KATTEN MUCHIN ROSENMAN LLP**
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067-5010
Telephone: 310.788.4400
Facsimile: 310.788.4471

Attorneys for Plaintiff
Travis Credit Union

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

TRAVIS CREDIT UNION,

Plaintiff,

v.

CUMIS INSURANCE SOCIETY, INC., an Iowa corporation; and DOES 1-10,

Defendants.

Case No. 2:24-cv-00823-DAD-DB

**FIRST AMENDED COMPLAINT**

Hon. Dale A. Drozd

**DEMAND FOR JURY TRIAL**

Plaintiff Travis Credit Union ("Plaintiff") alleges as follows:

## THE PARTIES

1. Plaintiff is a California-chartered credit union headquartered in Vacaville, California.

2. Plaintiff is informed and believes, and thereon alleges, that Defendant CUMIS Insurance Society, Inc. ("Defendant" or "CUMIS") is an Iowa corporation conducting business in California.

3. Plaintiff is unaware of the true names and capacities of the Defendants sued herein as Does 1 through 10, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the fictitiously named Defendants is liable to Plaintiff in some manner for the cause of action alleged herein. Plaintiff will seek leave to amend this Complaint to allege the true names and capacities of the fictitiously named Defendants when their identities have been ascertained.

## JURISDICTION AND VENUE

4. The Court has personal jurisdiction over CUMIS because it operates and conducts business in the State of California.

5. Venue is proper in Solano County because the contract was made, obligations or liabilities arose, and the performance of the contract and breaches occurred in Solano County.

## GENERAL ALLEGATIONS

6. Plaintiff purchased a CUMIS fidelity bond (the "Bond"). The Bond was effective at all relevant times alleged in this Complaint.

7. At least between January 1, 2021 and June 30, 2022, certain of Plaintiff's loan officers and complicit staff (hereinafter "loan officers") manipulated Plaintiff's real-estate loan origination system ("LOS") to misclassify real estate loan originations for purposes of generating improper and fraudulent commissions.

8. Pursuant to Plaintiff's 2021 commission plans, External Loan Officers were only entitled to commissions on externally-sourced loans that they actually closed on. The Sales

Manager Plan allowed for commission based upon all External Loan Officers' volume of loans funded.

9. In April of 2022, External Loan Officers were reclassified as Senior Mortgage Loan Officers.[1] At that time, "retail referred" loans (some of which may have been internally-sourced) became commissionable. However, they were only commissionable if the External Loan Officer actually generated the loan submission package with the borrower and submitted it to the operations team.

10. The first method the loan officers used to fraudulently misclassify real estate loan originations was to characterize them on Plaintiff's LOS as commissionable for certain employees when, in fact, they were not commissionable. The loan officers who perpetuated the fraud changed the loan officer assignment in the LOS to reflect that an External Loan Officer had either originated the loan, or had generated the loan submission package, when the External Loan Officer had not. In many instances, the LOS reassignment occurred shortly before or after the loans had actually funded. As a result, Travis's LOS falsely reflected a commission due to the External Loan Officer to whom the loans were reassigned, when no commission was actually due.

11. The second method the loan officers used to fraudulently misclassify loans was to make them appear to be commissionable at a higher rate than they were. Pursuant to Plaintiff's commission plans, in instances in which refinanced loans were commissionable, these loans were commissionable at a lower rate than new money. The loan officers who were engaged in the fraud would misclassify loans as new money, making them appear to be commissionable at the higher rate.

12. As a result of these misclassified loans, Plaintiff suffered a total of at least $714,812.00 in losses.

13. Upon discovery of the fraud, Plaintiff hired a forensic auditor to examine its lending portfolio to ascertain the scope of the defalcations and whether any loans suffered increased risk as a result of the fraud. The audit cost Plaintiff $43,058.76.

---

[1] The title "External Loan Officer" will be used throughout this Complaint for clarity.

14. All told, Plaintiff separated with 12 employees who either participated in the fraud, or who were derelict in supervising those employees and in performing their control responsibilities.

15. Plaintiff filed a claim with CUMIS on August 9, 2022. On August 11, 2022, CUMIS assigned a claim number and informed Plaintiff that it would review the claim for potential coverage, including coverage under the "Employee or Director Dishonesty Coverage" and the "Faith Performance – Enhanced Coverage" provisions of the Bond.

16. The Employee or Director Dishonesty Coverage provides that CUMIS will pay for loss resulting directly from dishonest acts committed by an employee or director where the dishonest acts are committed with the intent to cause Plaintiff to sustain such loss or obtain an improper financial benefit for the employee, director, or for any other person or entity. In other words, the Employee or Director Dishonesty Coverage pays for loss resulting from the dishonest acts committed by an employee.

17. The Faithful Performance – Enhanced Coverage provides that CUMIS will pay for loss resulting directly from an employee's failure to faithfully perform his or her trust.

18. The Bond also contains an Audit and Claims Expense coverage, which provides that CUMIS will pay the necessary and reasonable fees and expenses Plaintiff has paid for a special audit of its records to establish a valid and collectible loss under the Employee or Director Dishonesty Coverage or the Faith Performance – Enhanced Coverage.

19. On November 17, 2022, Plaintiff submitted proof of loss to CUMIS. Almost ten months later, despite the clear and unambiguous language of the Employee or Director Dishonesty Coverage and the Faithful Performance – Enhanced Coverage, CUMIS denied coverage on September 14, 2023.

20. The loss suffered by Plaintiff falls squarely within the coverage under the Bond. There are no exclusions under the terms of the Bond that permit CUMIS to avoid its obligation to indemnify Plaintiff. Nevertheless, CUMIS continues to deny coverage for the losses incurred by Plaintiff.

21. CUMIS has breached, and continues to breach, the terms of the parties' contract by refusing to cover Plaintiff for its losses pursuant to the terms of the Bond. CUMIS has also breached, and continues to breach, its duty of good faith and fair dealing to Plaintiff by, *inter alia*, asserting an interpretation of its Bond language that is inconsistent with its own understanding thereof, engaging in conduct calculated to further its own economic interests, and failing and refusing to cover Plaintiff for losses suffered.

## FIRST CAUSE OF ACTION

### (BREACH OF INSURANCE CONTRACT)

22. Plaintiff incorporates the allegations in paragraphs 1 through 21, above, as though fully restated here.

23. The Bond is a valid and enforceable contract.

24. Except to the extent that Plaintiff's performance has been excused, waived, or prevented by CUMIS's conduct, Plaintiff has performed all of the conditions, covenants and obligations that the Bond required it to perform.

25. CUMIS breached the Bond by, without limitation, refusing to indemnify Plaintiff despite the clear and unambiguous language of the Bond.

26. As result of CUMIS's breach of the Bond, Plaintiff has suffered damages in the amount of at least $714,812.00 paid to employees for the fraudulently misclassified loans and at least $43,058.76 in audit expenses and fees to establish a valid and collectible loss under the Bond.

## SECOND CAUSE OF ACTION

### (BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)

27. Plaintiff incorporates the allegations in paragraphs 1 through 26, above, as though fully restated here.

28. There was implied in the Bond a covenant of good faith and fair dealing whereby CUMIS agreed that it would act in good faith and deal fairly and honestly with Plaintiff and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's rights under the terms of the Bond.

29. As alleged herein, CUMIS breached the covenant of good faith and fair dealing by its acts, including but not limited to, the conduct alleged above.

30. Except to the extent Plaintiff's performance has been excused, waived, or prevented by CUMIS's conduct, Plaintiff has performed all conditions, covenants, and promises required on its part to be performed in accordance with the terms of the Bond.

31. As a proximate result of CUMIS's breach of the implied covenant of good faith and fair dealing, Plaintiff has suffered damages, including the amount it reimbursed its member assuming CUMIS would fulfill its obligations.

32. CUMIS's breach of the Bond was malicious and oppressive. CUMIS has accepted the policy premiums paid by Plaintiff but has denied coverage to avoid paying a legitimate claim. There is no objective basis, legally or factually, for CUMIS's position. Instead, Plaintiff is informed and believes and, on that basis, alleges that CUMIS took such actions with the intent of causing Plaintiff to litigate this action to obtain the indemnity it purchased from CUMIS. Therefore, CUMIS's actions were malicious and oppressive because they were conducted with a willful and conscious disregard of Plaintiff's rights and subjected Plaintiff to cruel and unjust hardship in conscious disregard of Plaintiff's rights. On that basis, Travis is entitled to recover punitive and exemplary damages.

## THIRD CAUSE OF ACTION

## (DECLARATORY RELIEF)

33. Plaintiff incorporates the allegations in paragraphs 1 through 31, above, as though fully reinstated here.

34. An actual controversy has arisen and now exists between Plaintiff and CUMIS concerning their respective rights, duties, and obligations under the Bond. Plaintiff contends that CUMIS has an obligation to indemnify Plaintiff for losses suffered as a result of the fraud perpetrated by its employees. CUMIS contends that it does not have such an obligation.

35. Plaintiff is entitled to a judicial declaration of its rights under the terms of the Bond.

36. Without such a declaration, Plaintiff is informed and believes that CUMIS will continue to deny coverage under the Bond.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For damages according to proof;
2. For a declaration that CUMIS is obligated to indemnify Plaintiff for losses incurred as result of the fraud by its employees as alleged above;
3. For punitive damages;
4. For interest on any sums due; and
5. For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff asserts its rights under the Seventh Amendment of the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

Respectfully submitted,

Dated: May 8, 2024

**KATTEN MUCHIN ROSENMAN LLP**

By: ______________________________

Stuart M. Richter
Attorneys for Plaintiff Travis Credit Union